UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WILLIS C. PERRY III,

     Plaintiff,

                              CASE NO.:

v.

RICK SINGH, individually and personally,
and RICK SINGH in his professional capacity as
ORANGE COUNTY PROPERTY APPRAISER,

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff WILLIS C. PERRY, III ("Plaintiff"), sues the Defendants, RICK SINGH, individually, ("Singh") and RICK SINGH ORANGE COUNTY PROPERTY APPRAISER ("OCPA") (collectively "Defendants") and alleges as follows:

### PRELIMINARY STATEMENT

1.    Plaintiff alleges that Defendant unlawfully suspended, and subsequently terminated, him immediately following Plaintiff's complaints to the Orange County Property Appraiser's Office regarding the agency's ramped unethical, illegal and fraudulent activities regularly occurring within the office. Plaintiff was also terminated for complaining about a hostile working environment and blatant racial discrimination with respect to equal pay and promotional opportunities for minority employees.

### FACTUAL ALLEGATIONS

2.    This is an action for damages that exceeds $15,000.00, exclusive of interest, court costs and attorneys' fees.

3.    Plaintiff is an individual residing in Orlando, Orange County, Florida.

4.      Defendant Singh is an individual residing in Orlando, Orange County, Florida.

5.      Defendant OCPA is a Florida governmental agency with its principal places of business in Orlando, Orange County, Florida.

6.      All acts and transactions that are the subject matter of this suit occurred within the jurisdiction of the Orlando Division of the United States District Court for the Middle District of Florida.

## CONDITIONS PRECEDENT

7.      Defendant is a Florida governmental agency with more than (15) employees.

8.      On or about April 3, 2017, Plaintiff timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and the Florida Commission on Human Relations ("FCHR").

9.      More than 180 days have passed since the time that the EEOC and/or the FCHR received the Charge of Discrimination on behalf of Plaintiff.

10.     A copy of the Plaintiff's Notice of Dismissal and Right to Sue is attached hereto **Exhibit E.**

11.     Accordingly, all conditions precedent to bringing this action, including, but not limited to, the administrative requirements, have been satisfied or otherwise waived.

## FACTUAL ALLEGATIONS

12.     At all relevant times, Plaintiff was employed by Defendant OCPA as a Human Resources Manager at the Orange County Property Appraiser's office, located at 200 S. Orange Avenue, Orlando, FL.  Plaintiff worked for OCPA since July 2015, until his retaliatory discharge on January 6, 2017.

13.   The work environment at OCPA during Plaintiff's tenure was dysfunctional, mismanaged and oppressive. Many employees were fearful and distrustful of the administration due to the culture created by Defendant Singh.

14.   As Property Appraiser, Singh made many poor management decisions, including hiring unqualified friends and family in positions of significant authority without providing proper training or adequate oversight. One employee hired by Defendant Singh, the Defendant's Director of Communications, had many adversarial dealings with a number of OCPA employees, including Plaintiff. The Director of Communications was never held accountable for her misconduct, presumably as a result of what was widely perceived as Singh's extra-marital affair with the Director of Communications.

15.   On June 10, 2016, Plaintiff provided a formal written complaint to Defendants outlining instances of sexual harassment and hostile working environment that were perpetrated by the Director of Communications, and that were being condoned by Defendants. **See Exhibit A.**

16.   In that letter, Plaintiff complained that Director of Communications was a bully, blatantly fabricated lies regarding her interactions with Plaintiff and other OCPA employees, made overtly racist comments, and regularly antagonized employees without a reasonable basis. As a result of Director of Communications' conduct, and Defendants' failure to address ongoing workplace issues, at least four OCPA employees resigned (some without notice)[1], due to the insufferable working environment. **Id.**

---

[1] OCPA's Chief Operating Officer abruptly resigned after 17 years of service, abandoning a $170,000 annual salary with no employment prospects. OCPA's Chief Attorney also abruptly resigned from an annual salary of $121,000 with no other employment prospects. Several other employees who voiced concerns or criticisms regarding OCPA's toxic culture were selectively terminated by Defendants or quit.

17.    Plaintiff also complained in his letter that: 1) African-American employees, including Plaintiff, were paid significantly less than other employees for the same or greater work; 2) employees that shared Singh's nationality/ national origin held the majority of the upper-level management positions and received the highest pay in the office (despite being the numeric minority in the office); and 3) no African-Americans, including more qualified individuals such as Plaintiff, were members of upper-management.

18.    In his letter, Plaintiff requested that:

    a.   all harassment by the Director of Communications be addressed and stopped by Defendants immediately;

    b.   all false allegations made against Plaintiff be either proven or retracted in the form of a written statement by the Director of Communications;

    c.   a salary/wage survey be performed in the office to establish parity amongst all OCPA employees; and

    d.   that OCPA review promotional opportunities for qualified African-American employees to enter into upper-management positions.

19.    No investigation into Plaintiff's complaints were ever performed by Defendants, nor was any response ever provided to Plaintiff regarding his complaints.

20.    Nonetheless, Plaintiff continued to perform his job to the best of his ability, while the office environment continued to deteriorate.  Specifically, Plaintiff witnessed a myriad of concerning office practices such as:

Fraudulent Audit Practices

- Defendant Singh illegally authorized and directed the deletion, alteration, removal, destruction and/or creation of false documents in preparation for submitting inauthentic documents to the Orange County Comptroller's office in the June 2015 financial audit.

- Defendant Singh threatened Martha Haynie, former Orange County Comptroller, with a racial discrimination lawsuit against one of her employees to gain favor in the June 2015 financial audit.

- Defendant Singh directed former OCPA employee(s) to Photoshop a photo of a 2013 Orlando event to make it appear that the event occurred in Tampa in 2015, in order to justify a fake travel expense discovered in the June 2015 financial audit.

- Defendant Singh obtained and submitted a fake doctor's note to justify a personal lay-over in Dallas/Ft. Worth while on an OCPA funded business trip to Sacramento. Defendant Singh told the Comptroller's Office that he had to stop-over in Houston, and could not take a direct flight to Sacramento, due to an ailing back.  However, Defendant acquired the doctor's note after the trip and only after the Comptroller questioned the travel expense.

Public Records Act Violations

- Defendant Singh continually violated Chapter 119, Florida Statutes, the "Florida Public Records Act," by:

    - Maintaining several personal email accounts from which he conducted official OCPA agency business and deliberately avoiding public records disclosure, by forwarding emails to his personal accounts and deleting emails from his official OCPA account;

    - Deleting agency emails from the Greenspoon Marder law firm (his daughter Amrita D. Singh's employer), and requesting that the law firm resubmit invoices without his daughter's name, to conceal the fact that she, in a conflict of interest, performed legal work for the OCPA's office; and

    - Instructing the Director of Communications to intentionally delay responding to public records requests and to re-draft documents to intentionally omit adverse information from being included in document productions.

Abuse of Authority/ Property Tax Favors

- Defendant Singh instructed Terry Taylor ("Taylor"), OCPA Residential Real Estate Director,[2] to increase the square footage of Defendant Singh's home, and thus increase the value of his home that he was attempting to sell, despite the fact that no property

---

[2] Taylor worked on Defendant Singh's election campaign and was hired as Real Estate Director on the day after Defendant Singh's election.  Defendant Singh also permits Taylor to collect full pay of at least $95,000 and benefits from OCPA while also being paid $3-5k to teach real estate classes during working hours. Taylor does not use vacation time to teach the classes.

appraiser was ever sent to re-assess the home and no documents exist to justify the increase in the square footage or the home's increase in sales price.

- Defendant Singh also directed Taylor to increase the square footage of Defendant Singh's campaign contributor and FBC Mortgage co-founder's home, and reduce the overall assessed value of the home by $100,000 dollars, which resulted in a substantial and continuing property tax reduction (also without any property re-assessment or petition by the owner for a property re-assessment).[3]

- Defendant Singh scheduled unnecessary real estate continuing education classes[4] with OCPA employees, so that his son, Avenash Singh, a non-OCPA employee, could attend the class to renew his own appraisal license (which was inactive due to his son missing his own continuing education renewal deadline).

Improper Campaign Activities

- Defendant Singh required quid pro quo or/and kickbacks from vendors in exchange for their campaign contributions. Specifically,

  - Defendant Singh awarded a contract to CAMA vendor E-ring, Inc.; however, E-ring, Inc. returned the contract payments after being continually harassed by Defendant Singh's insistence on having it make additional campaign contributions, and no longer having qualified leadership to execute the project following the COO's abrupt departure; and

  - It is believed that Defendant Singh revoked contracts with several vendors, including Access Data Solutions and Aerial Photography, for their failure to provide additional campaign contributions as requested by Defendant.

- Defendant Singh regularly required OCPA employees to perform personal campaign errands for him during office hours, such as soliciting and collecting campaign contributions and chauffeuring him to campaign events.[5]

- Defendant Singh hired family friend (who was also the highest paid clerical temporary employee at OCPA) to work on his re-election campaign during

---

[3] FBC Mortgage was also a sponsor of Defendants' 2015 State of West Orange Real Estate event.

[4] All residential and commercial OCPA appraisers had just renewed their licenses in 11/2016 and weren't due to renew again until 11/2018.

[5] Defendant Singh also had OCPA employees pick up his suits from the mall, pick up his personal medicine, even requested that an OCPA employee pick him up at home in an unmarked OCPA vehicle so that he could be chauffeured for personal purposes and avoid discovery.

office hours, including making campaign calls, keeping contribution logs and donor statuses, and organizing and creating campaign materials.

- Defendant Singh ordered campaign materials and postage for his re-election campaign and recorded them as OCPA office supplies.

<u>Conduct for Personal Benefit/Financial Gain</u>

- Defendant Singh receives a stipend from OCPA for use of his personal vehicle, despite the fact that he drives an OCPA SUV full-time. Defendant receives these payments three months in arrears to avoid detection from public record or audit.

- Defendant Singh flew to Tallahassee on July 29, 2014 in a private plane chartered by businessman Nik Patel without reporting it as a gift as required by Florida Statutes.

- Defendant Singh has purchased electronic equipment (iPads, computers, phones, etc.) paid for by OCPA taxpayer funds for his exclusive personal use and directed OCPA employees to destroy any records of the purchases in order to retain them as personal property

- Defendant Singh does not allow his OCPA issued SUV usage to be tracked or recorded as with other OCP vehicles. Defendant Singh parks his OCPA issued SUV at his house and claims that it is in need of repair in order to rent vehicles (at the expense of OCPA) to travel in and out of the state for personal use without being tracked.

21.    Outraged after witnessing these and other unethical activities, Plaintiff lost all confidence in Defendant Singh's moral capacity and his ability to lawfully and effectively manage the OCPA office.

22.    As such, on November 7, 2016, concerned about the manner in which the office was operating, and the depths that Defendant Singh would sink to conceal his unethical behavior, Plaintiff prepared a second letter to Defendants outlining some of the inappropriate, unethical and fraudulent activities perpetrated by Defendants, and requested that attention be paid to certain matters. **See Exhibit B.**

23.    On November 16, 2016, Defendant requested OCPA's outside legal counsel, Frank Kruppenbacher, to investigate the allegations made by the Plaintiff in his November 7, 2016 letter.

24.     On or about November 22, 2016, Plaintiff was told that he was being suspended with pay as a result of the investigation.

25.     On December 19, 2016 Plaintiff received a letter from Tatsiana Sokalava ("Sokalava"),[6] OCPA's new Chief Operating Officer (and Defendant Singh's 2016 re-election campaign manager), on behalf of Defendants, stating that it had "been concluded there is no basis to support the allegations of wrong doing" from the Plaintiff's November 7, 2016 letter to Defendant. **See Exhibit C.**

26.     Sokalava's letter also stated that there were "certain new matters regarding Plaintiff's performance as an employee that had been raised". Sokalava gave Plaintiff until December 27, 2016 to respond to a twenty-one-item list alleging Plaintiff's work performance concerns. Sokalava also stated that Plaintiff was "hereby placed on leave without pay effective immediately."

27.     Prior to Plaintiff's letters complaining of illegal and unlawful conduct on June 10, 2016 and November 7, 2016, Plaintiff had *never* been told of any issues regarding his work performance, or otherwise advised of any other issues with his work performance.

28.     Plaintiff responded in writing to Sokalava on December 26, 2016, stating in summary that the letter was replete with inaccuracies and misstatements. **See Exhibit D.**

29.     Plaintiff also stated that Defendants Singh and OCPA were attempting to mischaracterize Plaintiff as a poor performing employee in preparation for terminating Plaintiff's

---

[6] Sokalva was paid over $171,000 for her campaign services, and was hired by Defendant Singh as Chief Operating Officer after Defendant Singh's re-election at a salary of $95,000, despite Sokalava having worked in retail prior to her appointment and having no prior senior level management or corporate experience, or otherwise other relevant work experience.

employment, which was is in retaliation for complaining about how Plaintiff and other employees were treated, and for bringing other agency illegal and unethical activities to Singh's attention. **Id.**

30.     A few days later, after Defendants' alleged investigation of the facts surrounding Plaintiff's suspension, Defendants terminated Plaintiff on January 6, 2017. Plaintiff was not given any reason or explanation for his termination.

31.     On or about March 24, 2017, Plaintiff was given information that Defendant Singh gave negative job references and used his political connections to persuade potential employers, the Greater Orlando Aviation Authority Osceola County, Lake County and Goodwill, not to hire Plaintiff, despite his considerable 16 years of experience as a senior level human resources professional.

32.     Plaintiff has never received any verbal or written coaching, discipline or any other form of communication regarding his job performance or any indication that Plaintiff was not performing his job to Defendants' satisfaction until after he complained about illegal and unlawful conduct within the agency.

33.     On or about June 22, 2017 the Director of Finance and the Director of Communications wrote a letter to the Defendants complaining of similar unethical and illegal practices being conducted by Defendants. However, these employees were not terminated, but were suspended with pay pending an investigation. As of the composition of this complaint, both employees are still on a paid leave of absence that has lasted over four months.

34.     On information and belief, when Defendant Singh became aware of Plaintiff's pending lawsuit, Defendant Singh requested that an employee and colleague of the Plaintiff make a falsified claim that Plaintiff had engaged in inappropriate sexual conduct with her, and asked that she submit a formal sexual harassment claim against Plaintiff. The employee refused to submit a

false sexual harassment claim against Plaintiff. Defendant is intentionally attempting to create libelous and slanderous communications against Plaintiff in retaliation for bringing these claims, and to discredit Plaintiff's unblemished character.

## COUNT I
### VIOLATION OF FLORIDA WHISTLE-BLOWER ACT (Florida Statute §112.3187) (against Defendant OCPA)

35.     Plaintiff re-alleges and incorporates herein the allegations set forth in paragraphs 1-32 above.

36.     At all times material hereto, Plaintiff was an "employee" of the Defendant OCPA as defined by Section 112.3187(3)(b), Fla. Stat.

37.     Plaintiff disclosed information that was an act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, and/or gross neglect of duty committed by Defendants and an OCPA employee.

38.     Plaintiff disclosed information that was a violation or suspected violation of federal, state, or local law, rule, or regulation committed by Defendants and an OCPA employee, which created a substantial and specific danger to the public's health, safety, and welfare.

39.     Defendants intentionally took retaliatory action against Plaintiff, in the form of suspension and discharge, because he disclosed the aforementioned information to a local official.

40.     Defendants' illegal retaliation against Plaintiff was willful, malicious and taken with reckless indifference to Plaintiff's rights.

41.     As a result of Defendants' unlawful, retaliatory conduct, Plaintiff has suffered damages, including (without limitation) economic and emotional damages.

**WHEREFORE,** Plaintiff demands damages against Defendant for violation of Florida's Whistle-blower's Act, including, but not limited to, all relief available under Section 112.3187,

Fla. Stat., including (a) reinstatement or front-pay, (b) compensation for lost wages, benefits, and other remuneration, (c) any other compensatory damages allowable at law, and (d) attorney's fees, court costs and expenses, and (e) such other relief this Court deems just and proper.

## COUNT II – FLORIDA CIVIL RIGHTS ACT
### (Disparate Treatment/Unequal Pay/Failure to Promote)
### (against Defendant OCPA)

42.     Plaintiff re-alleges and incorporates herein the allegations set forth in paragraphs 1-32 above.

43.     Plaintiff is an African-American male and a member of a protected class.  While employed with Defendant, Plaintiff was qualified for his position as a human resources manager. Plaintiff was paid less and turned down for promotional opportunities, while less qualified individuals outside of his protected class were paid more for the same level of authority and employed in higher positions of management.  Plaintiff's disparate treatment affected a "term, condition or privilege" of his employment, and/or Plaintiff suffered an adverse employment action by virtue of the disparate treatment.

44.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered compensatory damages, emotional distress, mental pain and suffering, inconvenience, outrage, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff has retained counsel and is obligated to pay a reasonable attorneys' fee, which Plaintiff is entitled to recover under applicable law.

## COUNT III – FLORIDA CIVIL RIGHTS ACT (Retaliation)
### (against Defendant OCPA)

45.     Plaintiff re-alleges and incorporates herein the allegations set forth in paragraphs 1-32 above.

46.     The FCRA prohibits discriminatory and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

47.     Plaintiff complained and/or objected to Defendant about conduct that constituted racial discrimination and violations of a law, rule or regulation.  Accordingly, Plaintiff engaged in protected opposition conduct under the FCRA.

48.     Despite Plaintiff's complaints, no action was taken by Defendant to remedy the unlawful conduct.  Instead, Plaintiff was terminated for engaging in statutorily protected activity.

49.     Defendant also engaged in retaliatory conduct when it intentionally gave Plaintiff's potential employers a negative reference for purposes of prohibiting Plaintiff from seeking comparable employment following his termination.

50.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered compensatory damages, emotional distress, mental pain and suffering, inconvenience, outrage, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff has retained counsel and is obligated to pay a reasonable attorneys' fee, which Plaintiff is entitled to recover under applicable law.

## COUNT IV – Title VII (Disparate Treatment/Unequal Pay/Failure to Promote)
### (against Defendant OCPA)

51.     Plaintiff re-alleges and incorporates herein the allegations set forth in paragraphs 1-32 above.

52.     Plaintiff is an African-American male and a member of a protected class.  While employed with Defendant, Plaintiff was qualified for his position as a human resources manager. Plaintiff was paid less and turned down for promotional opportunities, while less qualified individuals outside of his protected class were paid more for the same level of authority and employed in higher positions of management.  Plaintiff's disparate treatment affected a "term, condition or privilege" of his employment, and/or Plaintiff suffered an adverse employment action by virtue of the disparate treatment.

53.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered compensatory damages, emotional distress, mental pain and suffering, inconvenience, outrage, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries, along with lost back and front pay, interest on pay, bonuses, pension and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff has retained counsel and is obligated to pay a reasonable attorneys' fee, which Plaintiff is entitled to recover under applicable law.

## COUNT V – Title VII (Retaliation)
### (against Defendant OCPA)

54.     Plaintiff re-alleges and incorporates herein the allegations set forth in paragraphs 1-32 above.

55.     Title VII prohibits discriminatory and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

56.     Plaintiff complained and/or objected to Defendant about conduct that constituted racial discrimination and violations of a law, rule or regulation.  Accordingly, Plaintiff engaged in protected opposition conduct under Title VII.

57.     Despite Plaintiff's complaints, no action was taken by Defendant to remedy the unlawful conduct.  Instead, Plaintiff was terminated for engaging in statutorily protected activity.

58.     Defendant also engaged in retaliatory conduct when it intentionally gave Plaintiff's potential employers a negative reference for purposes of prohibiting Plaintiff from seeking comparable employment.

59.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered compensatory damages, emotional distress, mental pain and suffering, inconvenience, outrage, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff has retained counsel and is obligated to pay a reasonable attorneys' fee, which Plaintiff is entitled to recover under applicable law.

### COUNT VI – 42 U.S.C. § 1981 via 42 U.S.C. § 1983 (First Amendment Retaliation)
### (against all Defendants)

60.     Plaintiff re-alleges and incorporates herein the allegations set forth in paragraphs 1-32 above.

61.     Plaintiff is an African-American male and a member of a protected class.  While employed with Defendant, Plaintiff engaged in various protected free speech activities protected by the First and Fourteenth Amendment, with respect to matters of legitimate interest to the public.

62.     Defendant OCPA and Defendant Singh, acting both individually and under the color of authority, and in violation of Plaintiff's right and privileges under the First and Fourteenth Amendment of the United States Constitution, deprived Plaintiff of his constitutional right to free speech and the right to petition without fear of redress.

63.     As a direct and proximate result of Defendants' conduct described above, Plaintiff has suffered compensatory damages, emotional distress, mental pain and suffering, inconvenience, outrage, embarrassment, humiliation, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff has retained counsel and is obligated to pay a reasonable attorneys' fee, which Plaintiff is entitled to recover under applicable law.

**WHEREFORE**, with respect to Counts II-VI, Plaintiff respectfully requests that this Court enter a judgment awarding all such legal and equitable relief as well effectuate the purpose of the aforementioned statutes including, but not limited to: a) awarding appropriate damages, including back pay and front pay, damages for pain and suffering or emotional damages, and punitive damages, b) issuing a declaratory judgment that Defendants' practices are violative of Plaintiff's rights under the applicable statutes, c) enjoining Defendants from continuing or maintaining the policy, practice and custom of denying employees their statutory rights under the applicable statutes, d) ordering Defendants to place Plaintiff in the position he would have had, absent Defendants' unlawful discrimination and retaliation, e) restoring Plaintiff with credits of all other employee benefits they would have received but for the Defendants' discrimination and retaliation, and, f) award Plaintiff's his costs and attorneys' fees pursuant to statutory authority.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated this _____ day of August, 2018.

Respectfully submitted,


_____

**Luis A. Cabassa**
Florida Bar No.0053643
Wenzel Fenton Cabassa P.A.
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Direct No.: (813) 379-2565
Facsimile No.: 813-229-8712
Email: lcabassa@wfclaw.com
Email: twells@wfclaw.com
**Attorneys for Plaintiff**


And


**JAIMON H. PERRY, ESQ.**
Florida Bar No. 0514020
jperry@perrylawfla.com
**THE PERRY LAW GROUP**
37 North Orange Avenue, Suite 500
Orlando, Florida 32801
407-323-2121
813-441-7444 (FAX)
Attorney for Plaintiff

# EXHIBIT A

6/10/2016


To: Rick Singh

From: Willis Perry

Please let this letter serve as my formal notice of complaint to Rick Singh - Orange County Property Appraiser (OCPA) of a hostile work environment and sexual harassment perpetrated by OCPA employee, Laverne McGee. In addition, I am also waging a complaint of race and wage discrimination by the Orange County Property Appraiser's office.

The work environment at OCPA is disruptive, dysfunctional, and laden with mistrust, resentment, and anger led mainly by Laverne McGee and upheld by the Orange County Property Appraiser.

Ms. McGee has committed numerous improper and unethical acts, made unsubstantiated claims of me stalking and harassing her, exhibited harassing and threatening behavior towards me, sent defamatory emails to my supervisor and the Property Appraiser, blatantly lied about me, made racist overtones/comments and has gotten into arguments with me (and mostly every other employee in Admin Services). This has established a pattern of conduct sufficiently severe or pervasive to alter the conditions of employment. Additionally, the disparate treatment, favoritism and the working conditions during (approximately the last 12 months) have become so intolerable that at least four (or more) out of ten employees have felt compelled to resign without notice in Admin Services alone. The Chief Operating Officer has recently resigned after 17 years of service, at an annual salary of over $170,000 and no other job prospects because of the current working conditions. There have been 2-3 new employees at each position in Admin Services since 2013. To date, there is over 100% turnover in Admin Services and 54% overall turnover at OCPA since that time frame.

Working conditions are so hostile that even prospective human resources employees have turned down opportunities to work at OCPA after interviewing with the Property Appraiser citing his attitude and a perceived hostile work environment/poor culture based on the totality of the circumstances.

African-American employees at OCPA are paid significantly less than all other ethnic groups on average. Employees of the Property Appraiser's ancestral nationality hold the majority of the upper level management positions, receive the highest pay and are the almost the fewest in number within OCPA. The rest of upper management consists of Caucasians while no African-Americans (male or female) hold an upper management position. Relocation, higher pay and short-term advancement have been afforded to others, yet I have been denied when the requesting the same.

The remedy I am seeking is for the harassment to stop immediately by Ms. McGee. In addition, all false allegations made against my character by Ms. McGee need to be either proven or retracted in the form of a written apology. A wage survey needs to be conducted internally to establish parity amongst all OCPA employees as well as the promotion of African-American employees into upper management positions. I would also like to be made whole for all relocation expenses occurred when I was told by the Property Appraiser and Chief Operating Officer that OCPA does not pay for relocation, when indeed OCPA has.

1

Before now I have sought and followed Mr. Singh's advice in regards to Ms. McGee but things have only gotten worse. I have tried to keep these issues within OCPA with the hopes of things getting better. Other employees who have voiced their displeasure or have provoked the ire of Ms. McGee or OCPA have been pressured to quit or have been selectively terminated. By speaking out formally, I am now definitely fearful of unlawful retaliation by Ms. McGee and/or the Orange County Property Appraiser's office as a result of me reporting any violations of a law, rule or regulation and waste. I have had no written or verbal work performance issues from the start of my employment thru year-to-date. I have mentioned on more than one occasion to my supervisor that my primary care physician has diagnosed me with pre-hyper tension as a result of this hostile work environment. Instituting civil action and/or participation in a statutory or regulatory proceeding may be continued or ensued.

## Willis Perry

Willis Perry

Cc: U.S. EEOC – Miami District Office
    Florida Commission on Human Relations
    Employee File

2

# EXHIBIT B

## Willis Perry

| | |
|---|---|
| **From:** | Willis Perry |
| **Sent:** | Friday, November 18, 2016 5:17 PM |
| **To:** | Rick Singh |
| **Subject:** | FW: Open Enrollment Reminder -McGEE EMAIL RESPONSE |

This was originally written on 10/28/2016. For your discussion. Thanks.


Willis Perry

Human Resources Manager

407.836.5032 work | 407.836.5238 fax

wperry@ocpafl.org | www.ocpafl.org

**From:** Willis Perry
**Sent:** Monday, November 07, 2016 11:55 AM
**To:** Willis Perry
**Subject:** RE: Open Enrollment Reminder -McGEE EMAIL RESPONSE

It's interesting that anyone who ever responds to any of your emails is accused of a condescending harsh tone and of being inappropriate.

You are the last person in this agency that should be commenting on the appropriateness and condescending manner of someone's actions.

Below are a few notable examples, but not an all-inclusive list of your inappropriateness (at the least) as a paid full-time OCPA Director:

> The five employees that quit while working for you because of your bullying of them is inappropriate and illegal;
> You trying to camouflage your resignation from Florida Diversity is inappropriate and unethical;
> OCPA having to pay outside companies and non-OCPA communication staff to write your office correspondence/communications (i.e. social media posts, speeches, etc.) is inappropriate and not a prudent use of tax payer dollars;
> As the Director of Communications/Lobbying and a salary of over $97,500, having to be taught how to post on Twitter, Facebook, use an iPad and basic OCPA software is inappropriate and shows your inexperience for the position;
> Your repeated violation of the dress code policy is inappropriate at the least as a Director;
> You deliberately leading the efforts to falsify audit documents is inappropriate, illegal and unethical;
> The comments you have made to others (especially those in non-management positions) about me and my department are inappropriate at the least and violation of OCPA policy.

I will reserve my comments about your inappropriate actions as a consultant for OCPA prior to being hired by OCPA for another discussion. Please note that I didn't include in the list above your mishandling of "public records request" as inappropriate, because we both know that is a direct violation of state law.


As for you needing help, you could have asked/discussed any concerns you may have had in person when you were in Human Resources on 10/12 and 10/28 talking about your benefits. You were told at that time your enrollment was in order. If the Property Appraiser and the 136 other OCPA employees take Human Resources' word on face value, then

1

maybe you should follow suit. Furthermore, out of the 136 employees, you are the only one who has raised such an issue.

Other OCPA employees on vacation and even out of the country completed their enrollment without Human Resources assistance by reading the materials and/or watching the instructional video. I have actually extended a professional courtesy to you in the past, only to have you unsuccessfully try to use it against me. In addition, I believe you are misinterpreting the mere statement of facts as a condescending harsh tone.

Your comment that "you run OCPA, that Rick listens to you" and that you would get me fired after the election is not only inappropriate, a threat, harassment and violation of OCPA policy.

Thank you.

**EXHIBIT C**

**RICK SINGH, CFA**
ORANGE COUNTY PROPERTY APPRAISER

200 S. Orange Avenue, Suite 1700 · Orlando, Florida 32801-3438 · (407) 836-5044



"Exceeding Excellence"

December 19, 2016

Willis Perry
280 Rangeline Road
Longwood, Florida 32750

Re:     Investigation Regarding Your E-Mail Allegations of
        November 7, 2016 Addressed to the Personal Account of Rick Singh and Your Employment
with the Orange County Property Appraiser's Office

Dear Mr. Perry:

I serve as the Chief Operating Officer for Rick Singh, Orange County Property Appraiser and have been asked to review the matters raised in this correspondence and provide a recommendation to the Property Appraiser. To date I am advised as follows:

Upon receipt of your email dated 11/7/2016 by Mr. Singh, Orange County Property Appraiser, at his personal email address, Mr. Singh requested an immediate investigation into the matter. This matter was assigned to the general counsel for investigation. Upon him notifying you that he had been assigned to an investigation, you advised him that you were "good with the boss and good with Laverne" and you did want it investigated. When the general counsel advised you that the investigation would go forward, you told him" it would not be good for Mr. Singh." Despite this admonition, the general counsel told you the investigation would go forward.

On November 16, 2016, you were provided a memorandum from the general counsel requesting information needed to proceed with the investigation. Thereafter, only after he did not receive the requested information and you were then directed by Mr. Singh, did you provide the information requested. Based upon a review of the information provided and interviews with relevant witnesses, it has been concluded there is no basis to support the allegations of wrongdoing. In fact, in review of the timing of events, your email can be construed as retaliation against Ms. McGee for having previously complained on multiple occasions about your harassing and inappropriate conduct towards her. You were previously directed to avoid contact with Ms. McGee yet there is evidence of you responding to an email from her in a derogatory and inappropriate manner unacceptable for the head of the agency's human resources department.

Next, the investigation resulted in certain new matters being reported and learned regarding your performance as an employee. This conduct and/or job performance if true, would warrant discipline up to and including discharge. Although you are an at-will employee, I am providing you with the information we have learned and an opportunity to respond to it prior to my making a final recommendation as to your employment. The allegations relevant to your job performance are as follows:


/OCPAFL


@RickSinghOCPA


@RickSinghOCPA


/RickSinghOCPA

**RICK SINGH, CFA**
ORANGE COUNTY PROPERTY APPRAISER

200 S. Orange Avenue, Suite 1700 · Orlando, Florida 32801-3438 · (407) 836-5044



*"Exceeding Excellence"*

1.     There is no professional storage of I-9 records.

2.     Various I-9 records are not in compliance with federal law.

3.     The agency appears to be in non-compliance with FRCA; FMLA; HIPPA (doctor's notes are not secured but scattered throughout your office and multiple employee files are combined).

4.     There are multiple incidences of no records evidencing employees signing an Annual Property Disclosure Form.

5.     There is no structured agency-wide on-boarding process.

6.     The agency's FMLA policies are outdated and not in compliance with federal law.

7.     Many human resource forms are out of date and appear to be being used in violation of applicable trademark/copyright law.

8.     Information provided to employees from you for open enrollment is confusing and fails to efficiently implement the open enrollment process.

9.     There is no agency wide performance review process thus permitting.

10.    There is no established agency-wide training and development process for employees.

11.    There is no agency-wide established promotion process.

12.    There is no established succession plan for employees of the agency.

13.    There is no established discipline process for employees of the agency.

14.    There does not exist any agency-wide EEO training for agency employees.

15.    There are multiple reports of employees providing you documents and those documents being lost.

16.    A complete lack of filing exists based upon an inspection of your office.

17.    Various employees have not had their personnel files created.


/OCPAFL


@RickSinghOCPA


@RickSinghOCPA


/RickSinghOCPA



**RICK SINGH, CFA**

ORANGE COUNTY PROPERTY APPRAISER

200 S. Orange Avenue, Suite 1700 · Orlando, Florida 32801-3438 · (407) 836-5044

*"Exceeding Excellence"*

18.    There exists no matrix for analyzing turnover; reasons for turnover and proposals for correcting any turnover issues or data collected from exit interviews.

19.    You have engaged in slanderous and divisive comments regarding a fellow employee Laverne McGee to your subordinate employees and have thus failed to conduct yourself in a professional manner.

20.    The documentation of an employee who was written up by their manager was not maintained in your office.

21.    You were untruthful when you were relieved of duty and attempted to take Agency property and when questioned stated it was not Agency property.

As you can see from my review of the above, there is evidence that you have failed to do your job or are incapable of doing your job.

At this time, I am providing you the opportunity to report to 16th Floor Receptionist, 20 N. Orange Avenue, Orlando, on December 27, 2014 at 4:00 p.m., to provide me any information you want considered as I evaluate my recommendation for what actions should be taken in this matter. You may bring a representative to that meeting. Until conclusion of this matter, you are hereby placed on leave without pay effective immediately.

Respectfully yours,

Tatsiana Sokalava
Chief Operating Officer
Orange County Property Appraiser



**/OCPAFL**          **@RickSinghOCPA**          **@RickSinghOCPA**          **/RickSinghOCPA**



# EXHIBIT D

December 26, 2016

Tatsiana Sokalva
Chief Operating Officer
Orange County Property Appraiser
200 S. Orange Avenue, Suite 1700
Orlando, FL 32801

> Re:   Investigation Regarding Your E-Mail Allegations of November 7, 2016
>        Addressed to the Personal Account of Rick Singh and Your
>        Employment with the Orange County Property Appraiser's Office

Dear Ms. Sokalava,

I have had the opportunity to review your letter dated December 19, 2017. Based on
the significant mischaracterizations of my words and actions set forth in your letter,
I have serious concerns about discussing this matter in person without the benefit of
a written response. I would like to thank you for the opportunity to respond in
person. However, please let this letter serve as my response to your letter as
requested, so that my response is clear and kept in the proper context.

On Thursday, November 3, 2016, I requested a meeting with Rick Singh for the next
day, Friday, November 4, 2016. On Friday, Rick Singh replied, "regarding??". In
response, I indicated several personnel issues that I wanted to make him aware of,
including my written email complaint regarding OCPA employee Laverne McGee. I
also indicated that we could meet on Saturday, November 5, 2016 or Sunday,
November 6, 2016 if those dates would work better for his schedule. Rick Singh
requested that I call him, which I did, but he never answered the call.

On Monday, November 7, 2017, I spoke with Rick Singh and I again informed him
about the issues I was having with OCPA employee, Laverne McGee. I told him about
the complaint email that I had written and requested that he review it immediately.
At my suggestion, and as we have done in past situations that could potentially be
damaging to OCPA and/or Rick Singh individually, he agreed that I should send my
complaint email to his personal email account so that the issue wouldn't become
public record. This was the only reason Rick Singh's personal email account was
used – per his request.

The general counsel's account of my conversation with him regarding the
investigation not going forward in your letter dated December 19, 2016 is
embellished and inaccurate. Specifically, I did not miss the deadline to provide
information. On Friday, November 18, 2016, in my office, the general counsel
personally extended the deadline for me to provide him the information needed to

proceed with the investigation, after I told him I needed more than 26 hours to comply. The general counsel is whom I was instructed to provide the information to and I did what he agreed was permitted.

Most importantly, I was never directed to avoid contact with OCPA employee Laverne McGee; however, I took it upon myself to do so. OCPA employee Laverne McGee and I have not had any personal interaction or verbal conversations for approximately nine months, if not longer. However, we have had to interact via or through electronic correspondence in order to perform our respective jobs. Had I not responded to OCPA employee, Laverne McGee's emails, I would be subjected to the same bogus criticism for not responding. I even followed Rick Singh's directive to give OCPA employee, Laverne McGee preferential treatment; but that only made her hostility towards me worsen.

When I was hired on, July 2, 2015, there was no Human Resources Manager job description. I had to create one for the position.  Consequently, all of the allegations you allege in your letter that I did not perform were:

1. Not under the Human Resources Manager's direct responsibility or given authority;
2. Assigned to the appropriate employee upon hiring that individual;
3. Include tasks that did not and still do not exist today
4. Corrected by the Human Resources Manager; and/or
5. Never surfaced or brought to my attention under any circumstances until my complaint against OCPA employee Laverne McGee and my complaints about other improprieties going on in the OCPA's office.

Accordingly, I respond to each specific allegation in corresponding numbered paragraphs as follows:

      1.     This job function was never the direct responsibility of the Human Resources Manager. These tasks were historically performed by the Human Resources Generalist position, which can be confirmed and is well documented. The position remained vacant for ten months. The new Human Resources Generalist, Barbara Jubran, was assigned this task upon her hiring. Additionally, objective goals were set for her to complete these responsibilities within the first three months of her employment.

      2.     See response to allegation # 1.

      3.     See response to allegation # 1.

      4.     See response to allegation # 1.

      5.     This job function did not exist prior to my hiring. I created an agency onboarding process and it is being used currently. This documentation has been provided to Rick Singh on more than one occasion.

      6.     See response to allegation # 1.

      7.     See response to allegation # 1.

8.       This allegation is wholly inaccurate. The 2016 open enrollment went extremely smoothly for 136 out of 137 employees. The only complaint that I am aware of came from OCPA employee, Laverne McGee, who, for reasons unknown to me, clearly has a personal and negative bias towards me personally.

9.       The agency performance review process was handled by the Chief Operating Officer prior to my hiring and remained that way until his resignation. A new agency performance review process was implemented under my direction in October 2016. This allegation is wholly inaccurate.

10.       The agency training and development process was handled by the Administration Operation Coordinator prior to my hiring and remained that way until her resignation. Rick Singh never allowed training or agency meetings to become a part of Human Resources. The hiring of a new Administration Operation Coordinator who handles agency training and meetings also evidences this.

11.       The agency promotion process is listed in the OCPA employee handbook. All promotions, position movement and financial increases are granted on the basis of whom ever Rick Singh holds in favor at the time, and he has never relinquished this authority.

12.       The agency succession plan did not exist prior to my hiring and still does not exist presently. Rick Singh is not in favor of such a plan and keeps that information tightly guarded. Rick Singh and I have met on numerous occasions regarding this subject matter. I asked him how he wanted his organization to look going forward but no comment or follow-up ever ensued.

13.       The agency discipline process, is listed in the OCPA employee handbook.

14.       See response to allegation # 10.

15.       Prior to my complaint against OCPA employee Laverne McGee, there were never any issues raised about filing or lost documentation. I am not aware of any such reports, nor have any reports been brought to my attention.

16.       After being placed on a Leave of Absence (Tuesday, November 22), surrendering all keys to my office and losing access to my office, I have no know idea what you or anyone else could have done to the contents and/or state of my office. I have never had any discussions with anyone at OCPA regarding the state of my office until your letter.

17.       See response to allegation # 1.

18.       This allegation is wholly inaccurate. Rick Singh and I met weekly to discuss turnover, recruiting and possible internal placements. All resignations letters and exit interviews were sent to Rick Singh electronically. Exit interview paperwork was deliberately withheld from two exiting employees by Rick Singh and Laverne McGee for fear the employees would cite working conditions, unethical behavior and mistreatment as reasons for their departure. I created an analysis of exit interview comments from employees who left the TPP Department disgruntled and/or had issues with management, presented it to Rick Singh and no corrective action was ever taken by him. Most of my time and our meetings were to discuss the 20 vacancies I had to fill in 2016 alone, the over 52% agency turnover and the over 100% Admin Services turnover since he took office. Only since his re-election has Rick Singh tried to create and re-implement morale and team building activities.

19.     This allegation is wholly inaccurate. I went without a subordinate employee for ten months and I did not and would not make any slanderous comments about any OCPA employee (including Laverne McGee) to anyone in general or a newly hired, especially as the Human Resources Manager.

20.     This allegation is wholly inaccurate. I am not aware of any such missing write-ups, nor has anything of this nature ever been brought to my attention.

21.     This allegation is wholly inaccurate and slanderous. I never tried to take any OCPA property. Rick Singh inappropriately retained personal documents belonging to me.

In summary, I believe that your letter is replete with inaccuracies and misstatements. I also believe that the OCPA is attempting to characterize me as a poor performing employee in preparation for terminating my employment, which is in retaliation for complaining about how I and other employees are treated, and for bringing other agency improprieties to Rick Singh's attention. I have never received any verbal or written coaching, discipline or any other form of communication regarding my job performance or any indication that I was not performing my job to Rick Singh's satisfaction.

Thank you for your attention.  Please feel free to contact me if you have any questions, or if I can provide any additional information.

Respectfully yours,


Willis Perry

# EXHIBIT E



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7016 2140 0000 5580 7662

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

August 15, 2018

Mr. Willis Perry
c/o Jaimon H. Perry, Esquire
Perry Law Group
37 North Orange Ave.
Suite 500
Orlando, FL 32801

Re: EEOC Charge Against Orange County Property Appraiser
    No. 511201701456

Dear Mr. Perry:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Tampa Area Office, Tampa, FL.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                    Sincerely,

                                    John M. Gore
                              Acting Assistant Attorney General
                                   Civil Rights Division

                         by *Karen L. Ferguson*
                                Karen L. Ferguson
                           Supervisory Civil Rights Analyst
                           Employment Litigation Section

cc: Tampa Area Office, EEOC
    Orange County Property Appraiser