# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**WILLIS C. PERRY III,**

   **Plaintiff,**

**v.**           **Case No:  6:18-cv-1424-Orl-31TBS**

**RICK SINGH and ORANGE COUNTY
PROPERTY APPRAISER,**

   **Defendants.**

_____

# ORDER

This case arises out of the termination of Plaintiff Willis C. Perry III by Defendants Orange County Property Appraiser Rick Singh and the Orange County Property Appraiser's Office (OCPA).  Perry alleges, among other things, that Singh and OCPA retaliatorily fired him after Perry spoke out about wrongdoing at OCPA and that Singh and OCPA treated Perry differently based on his African-American race.  (See generally Doc. 1).  Consequently, Perry filed the instant lawsuit against Singh in his personal and professional capacities.[1]  Perry asserts claims pursuant to the Florida Whistle-blower's Act (FWA), the Florida Civil Rights Act (FCRA), Title VII of the Civil Rights Act of 1964 (Title VII), and the First Amendment.  (See generally id.).

On September 27, 2018, OCPA filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 8).  OCPA argues that this Court should dismiss Perry's Complaint because it wholly fails to state a claim upon which relief can be granted.  On

_____

[1] Throughout this Order, "Singh" refers to Singh in his individual capacity and "OCPA" refers to Singh in his professional capacity as Orange County Property Appraiser.

that same date, OCPA also filed a Motion to Strike under Federal Rule of Civil Procedure 12(f) (Doc. 9).  In that motion, OCPA argues that the Court should strike from Perry's Complaint certain allegedly immaterial paragraphs as well as Perry's claims for punitive damages against OCPA.  On October 22, 2018, Perry responded to both motions in a single filing.  (Doc. 20).  With the exception of OCPA's request to strike the punitive damages claims, Perry opposes both motions.  After careful consideration, this Court will grant in part and deny in part both of OCPA's motions.

## I.   Background[2]

OCPA employed Perry as a Human Resources Manager.  (Doc. 1 at 2).  Perry worked in that role from July 2015 until his termination on January 6, 2017.  (Id.).  Perry alleges that his tenure at OCPA was marked by discord and dysfunction because of Singh. (Id. at 3).  Perry claims that Singh made questionable management decisions, including: (1) installing friends and family in top positions without the proper training or oversight; (2) engaging in fraudulent auditing practices; (3) committing violations of the Florida Public Records Act; (4) abusing his authority and using his position as Property Appraiser to fraudulently increase the value of his personal assets; (5) engaging in improper campaign activities; and (6) using his office for personal gain.  (See id. at 4–7).  Perry also asserts that certain members of Singh's senior staff—including Singh's Director of Communications, Laverne McGee—bullied Perry and made overtly racist comments toward him.  (Id. at 3).

---

[2] The facts included in this section are taken entirely from Perry's Complaint and the exhibits attached to the Complaint.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007) (noting that at the motion-to-dismiss stage, courts must operate "on the assumption that all the [factual] allegations in the complaint are true (even if doubtful in fact)").

As a result of this work environment, on July 10, 2016, Perry sent a letter ("the July letter") to Singh, opening it by noting that it would serve as a formal written complaint of "a hostile work environment and sexual harassment perpetrated by OCPA employee, Laverne McGee" and that he was "waging a complaint of race and wage discrimination by the Orange County Property Appraiser's Office." (Doc. 1-2 at 2). Perry alleged in the July letter that McGee had lied about Perry, made racist comments to him, and created a hostile work environment. (See id.). He further discussed the turnover rate at OCPA, noting that it was so high because of this hostile work environment. (Id.). Perry's July letter also noted that African-American OCPA employees were paid less than other ethnic groups, that no African-Americans held upper-management positions, and that the majority of upper-management positions were held by individuals with the same national origin as Singh. (Id.). Perry explained in the July letter that he had previously tried to handle these issues internally at OCPA, but the July letter noted that it was sent to both the United States Equal Employment Opportunity Commission – Miami District Office (EEOC) and the Florida Commission on Human Relations (FCHR). (See id. at 3). Perry closed the July letter by discussing possible remedies. (Id. at 2–3). Perry's Complaint does not indicate whether OCPA or Singh ever addressed the allegations in the July letter.

Perry claims that following the July letter, the situation at OCPA continued to deteriorate. (Doc. 1 at 7). Consequently, on November 7, 2016, Perry sent an email ("the November letter") regarding the issues at OCPA to Singh at his personal email address.[3]

---

[3] Perry appears to have drafted the email as a response to McGee, as the subject line of the email reads: "RE: Open Enrollment Reminder -McGEE EMAIL RESPONSE." (See Doc. 1-3 at 2). After drafting this document, Perry emailed it to himself and then forwarded it to Singh's personal email address with the note: "This was originally written on 10/28/2016. For your discussion. Thanks." (Id.). Perry later noted that Singh had a

In the November letter, Perry expressed displeasure with McGee regarding several issues, including: (1) McGee's bullying of five employees who subsequently quit; (2) OCPA's paying outside companies to do what Perry believes McGee was hired to do; (3) McGee leading the efforts to falsify audit documents; and (4) McGee making inappropriate comments throughout OCPA about Perry and the Human Resources Department.  (See Doc. 1-3 at 2).  Perry further noted that he did not include McGee's mishandling of "public records request[s]" in his bulleted list of complaints because "we both know that is a direct violation of state law."  (Id.).  The November letter also included complaints about McGee's need for assistance with the open enrollment process.  (See id. at 2–3).  Perry concluded the November letter by noting that McGee's comment that "[she] run[s] OCPA, that [Singh] listens to [her]" and that "[she] would get [Perry] fired after the election is not only inappropriate [but also] a threat, harassment and violation of OCPA policy."  (Id.).  The Complaint does not indicate whether Perry ever spoke with Singh after he sent the November letter.

Shortly after the November letter—on November 16, 2016—Singh requested that OCPA's outside legal counsel investigate Perry's allegations.  (Doc. 1 at 7).  On November 22, 2016, Perry received notice that he was being suspended with pay as a result of the ongoing investigation.  (Id. at 8).  On December 19, 2016, Perry received a letter from Tatsiana Sokalava—OCPA's new Chief Operating Officer and Singh's 2016 re-election campaign manager—advising him that "[b]ased upon a review of the information provided

---

policy that complaint emails be sent to Singh's personal email address so that the issues would not be made a part of the public record.  (Doc. 1-5 at 2).

and interviews with relevant witnesses, it has been concluded there is no basis to support the allegations of wrongdoing [contained in the November letter]." (Doc. 1-4 at 2).  Next— in the very same letter notifying Perry about the results of the outside counsel investigation—Sokalava advised Perry that the investigation actually revealed that Perry had been deficient in the performance of his duties and that "if true, [Perry's actions] would warrant discipline up to and including discharge."  (Id.).  The letter then listed twenty-one instances of alleged misconduct by Perry and notified him that he had until December 27 to respond to the allegations.  (Id. at 2–4).  Finally, the letter informed Perry that he was suspended without pay until the conclusion of the matter.  (Id. at 4).  Prior to the letter from Sokalava, Perry had never been told of any issues regarding his work performance.  (See Doc. 1 at 8).

On December 26, 2016, Perry responded to Sokalava's letter in writing.  (See Doc. 1-5).  In his response, Perry either disputed or offered clarifying remarks regarding each of the allegations of misconduct contained in the letter.  (See generally id.).  Perry also accused both OCPA and Singh of attempting to mischaracterize Perry's performance as an employee to lay the groundwork to terminate him in retaliation for the July and November letters. (Doc. 1 at 8–9).  On January 6, 2017, Singh and OCPA terminated Perry without explanation.  (Id. at 9).  After his termination, Perry learned that Singh used his "political connections" to persuade other potential employers not to hire Perry.  (Id.).  Perry also alleges that Singh encouraged one of Perry's colleagues to file a formal sexual harassment complaint against Perry after he filed the instant lawsuit.  (See Doc. 1 at 9–10).

On April 3, 2017, Perry filed a charge of discrimination with the EEOC and the FCHR.  (Id. at 2).  On August 15, 2018, the EEOC issued a right-to-sue letter.  (Doc. 1-6 at 2).  The current lawsuit followed.  As noted above, OCPA now moves to dismiss Perry's Complaint in its entirety for failure to state a claim and to strike certain portions of the Complaint.

## II.   Legal Analysis

### A.   Motion to Dismiss

#### 1.   *Legal Standard*

When ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts are instructed to consider whether a pleading "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Though Federal Rule of Civil Procedure 8(a)(2) only "requires that a complaint provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[,]'" a complaint containing only "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice.  Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2)).  Therefore, a complaint that "provides 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' is not adequate to survive a Rule 12(b)(6) motion to dismiss."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

This standard does not—of course—force a plaintiff to provide "detailed factual allegations" to survive a motion to dismiss under Rule 12(b)(6).  Twombly, 550 U.S. at 555.  Rather, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true

(even if doubtful in fact)."  Id.  (internal quotation marks and citations omitted).  At bottom, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### 2.    Florida Whistle-blower's Act

The first count of Perry's Complaint alleges that OCPA violated the FWA.  This statute, codified at section 112.3187, Florida Statutes, prohibits local government agencies from disciplining or discharging an employee for disclosing certain types of information about misconduct occurring in the workplace.  See Fla. Stat. § 112.3187(4).  The statute authorizes aggrieved persons, with certain limited exceptions not applicable here, to "bring a civil action in any court of competent jurisdiction within 180 days after the action prohibited by [the FWA]."  Id. § 112.3187(8)(c).

Here, OCPA terminated Perry on January 6, 2017.  (Doc. 1 at 9).  However, Perry did not file this lawsuit alleging violations of the FWA until August 29, 2018,  (see id. at 15), well beyond the statutorily-provided 180-day period.  Perry's FWA claim is thus untimely. See King v. Bd. of Cty. Comm'rs, 226 F. Supp. 3d 1328, 1337 (M.D. Fla. 2016) ("[A] claim under Florida's whistleblower statute must be brought within 180 days of the violation."); see also Pintado v. Miami-Dade Cty. Hous. Agency, 20 So. 3d 929, 932 (Fla. 4th DCA 2009) ("[I]f the public employee opts to file a civil action asserting a whistle-blower's claim under the [FWA], the claim *must* be filed within 180 days." (emphasis in original)).  Count I will therefore be dismissed with prejudice.

### 3.    Florida Civil Rights Act and Title VII – Counts II & IV

Perry also asserts claims under the FCRA and Title VII against OCPA.  His Complaint contains two FCRA claims—Counts II and III—and two Title VII claims—Counts

IV and V.[4]  Perry's first set of parallel claims under the FCRA and Title VII—Counts II and IV—are styled as claims for "disparate treatment/unequal pay/failure to promote" against OCPA.  (See Doc. 1 at 11–12).  OCPA argues that combining all three of these claims into a single count is a forbidden "shotgun pleading" because it fails to provide sufficient notice to OCPA of the claims asserted against it.  (See Doc. 8 at 7).  Perry disagrees.  (See Doc. 20 at 8–9).

To address OCPA's challenge, the Court begins with a recitation of the elements of the relevant causes of action.[5]  To establish a prima facie case for disparate treatment in a race discrimination case, a plaintiff ultimately "must show that: (1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) [he] was qualified for the job." Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).  Relatedly, to establish a prima facie case of "intentional compensation discrimination based on race, the plaintiff must establish that: (1) he belongs to a racial minority; (2) he received lower wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) he was qualified to receive the higher wage." Hill v. Emory Univ., 346 F. App'x 390, 395 (11th Cir.

---

[4] Because of the similarities in the FCRA and Title VII, Perry's claims under these statutes will be analyzed together.  See Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) ("The Florida Civil Rights Act was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII.  As such, the district court did not independently analyze Wilbur's Florida Civil Rights Act claims, and they will not be independently analyzed in this opinion.").

[5] Perry does not need to assert a prima facie case using these elements at this stage of the case.  The elements of these causes of action are only recited to properly analyze OCPA's shotgun pleading argument.

2009).  Finally, to establish a prima facie case of discriminatory failure to promote, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified and applied for the promotion[;] (3) he was rejected despite his qualifications[;] and (4) other equally or less qualified employees who were not members of the protected class were promoted." Price v. M & H Valve Co., 177 F. App'x 1, 12 (11th Cir. 2006).

The various Title VII theories of recovery Perry asserts have similar elements. These elements, however, are not identical.  Perry nonetheless intertwines each of these theories of recovery in a single count in his Complaint.  Put another way, Perry does not make clear on which theory of recovery—disparate treatment, unequal pay, failure to promote, or all three—Counts II and IV rest.  Complaints such as this—that violate either Federal Rule of Civil Procedure 8(a)(2) or 10(b)[6]—qualify as "shotgun pleadings."  See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015).  These types of pleadings are deficient because they fail "to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018).  Courts in the Eleventh Circuit have "little tolerance for shotgun pleadings."  Id.

One particular category of shotgun pleading identified by the Eleventh Circuit is relevant here: A pleading that "commits the sin of not separating into a different count each cause of action or claim for relief."  Weiland, 792 F.3d at 1323.  Counts II and IV of Perry's

---

[6] Federal Rule of Civil Procedure 10(b) provides: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b).

Complaint qualify as shotgun pleadings because they combine into a single count multiple theories of recovery.  See Bickerstaff Clay Prods. Co. v. Harris Cty., Ga., 89 F.3d 1481, 1484 n.4 (11th Cir. 1996) ("The complaint is a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief.  Moreover, in some instances one cannot discern, with respect to a given claim for relief, the substantive rule giving rise to the claim." (internal citation omitted)).

When a plaintiff submits a shotgun pleading, the Eleventh Circuit mandates a specific course of action.  "[If] a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds."  Vibe Micro, Inc., 878 F.3d at 1296.  The Eleventh Circuit further instructed that "the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings."  Id.  Having noted the deficiencies in Perry's Complaint as it relates to Counts II and IV, the Court will—as noted below—dismiss Counts II and IV without prejudice.[7]

> 4.    *Florida Civil Rights Act and Title VII – Counts III and V*

Perry's next two parallel claims under the FCRA and Title VII—Counts III and V, respectively—are retaliation claims.  (See Doc. 1 at 11, 13–14).  Title VII prohibits employers from "retaliating against an employee because he has opposed any . . . unlawful employment practice."  Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012) (citation

---

[7] The Court notes that even though Perry's other counts do not qualify as shotgun pleadings, Perry's method of incorporating all of his factual allegations into each count—without specifying which facts apply to which cause of action—diminishes the clarity of the Complaint.

omitted) (alterations in original).   Here, Perry alleges in Counts III and V that he was suspended and ultimately terminated because he complained about racial discrimination that pervaded OCPA.  (See Doc. 1-2 at 2).  Although OCPA argues to the contrary, Perry's allegations are sufficient to state a claim for retaliation under the FCRA and Title VII.  OCPA contends that Perry will not be able to establish "but for causation," but at the motion-to-dismiss stage the Court is concerned not with proof but with pleading.

Perry pleaded in his Complaint that he is an African-American male who was terminated from his employment at OCPA not long after complaining about racial discrimination at OCPA.  (See Doc. 1 at 7–11).  Perry further notes that he had never been subject to discipline before he complained about the misconduct occurring at OCPA.  (See id. at 9).  These facts are sufficient to "nudge[] [Perry's FCRA and Title VII retaliation claims] across the line from conceivable to plausible."  Twombly, 550 U.S. at 570.  The Court will thus not dismiss Count III or Count V of Perry's Complaint.

### 5.   *First Amendment Retaliation*

The final count of Perry's Complaint asserts a claim against OCPA and Singh for First Amendment retaliation.[8]  OCPA first argues that Perry's First Amendment claim fails because he has not alleged that he suffered any adverse employment action as a result of his speech.  (See Doc. 8 at 15).  Alternatively, OCPA argues that Perry's two letters do not qualify as speech by a citizen on a matter of public concern and are therefore not entitled to First Amendment protection.   (See id. at 13–14, 16).   In his response, Perry only

---

[8] This Order addresses the First Amendment claim only as it relates to OCPA.  Singh has filed a separate motion to dismiss that will be addressed by a separate order.

addresses OCPA's contention that the First Amendment did not protect his speech.  (See Doc. 20 at 10).

Though the "law is well-established that the state may not demote or discharge a public employee in retaliation for speech protected under the [F]irst [A]mendment, a public employee's right to freedom of speech is not absolute."  Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989).  In Pickering v. Board of Education, 391 U.S. 563 (1968), the Supreme Court noted "a public employee's interests are limited by the state's need to preserve efficient governmental functions."  Bryson, 888 F.2d at 1565.

In striking the balance between these competing interests, a "four-stage analysis has evolved."  Id.  First, the "court determines the threshold issue raised in Pickering— whether the employee's speech may be 'fairly characterized as constituting speech on a matter of public concern'" by a citizen.  Id. (quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987)).  Second, if the court finds that the speech addresses a matter of public concern, the court "then applies the second prong of Pickering, the balancing test, weighing the employee's first amendment interests against 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'"  Id. (quoting Pickering, 391 U.S. at 568).

If the public employee prevails on the first two steps, the third step involves the "fact-finder determin[ing] whether the employee's speech played a 'substantial part' in the government's decision to demote or discharge the employee."  Id. at 1565–66 (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285 (1977)).  Fourth, if the employee prevails in showing that the protected speech was a substantial motivating factor in the state's employment decision, the "state must prove by a preponderance of

the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." Id. at 1566 (citing Mt. Healthy, 429 U.S. at 286).

However, the Court need not perform an exhaustive analysis of these factors because Perry's Complaint fails at a more basic level.  Perry fails to allege anywhere in his Complaint that the adverse employment action he suffered was related to his potentially protected speech.  Perry does allege that OCPA violated his First Amendment rights, but he fails to say *how* they violated those rights.  He thus has not stated a First Amendment retaliation claim.  See Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006) ("[A] complaint must . . . contain either direct or inferential allegations respecting all material elements of a cause of action." (emphasis omitted)).  Count VI therefore will be dismissed without prejudice.

### B.   Motion to Strike

#### 1.   Legal Standard

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Generally, a court "will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or [may] otherwise prejudice a party."  Reyher v. Trans World Airlines, Inc., 881 F. Supp. 574, 576 (M.D. Fla. 1995).  In evaluating a motion to strike, courts must "treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings."  Id. (citation omitted).

#### 2.   Discussion

OCPA alleges that three paragraphs in Perry's Complaint should be stricken because they are scandalous and immaterial, prejudice OCPA, and would result in

unnecessary litigation.  (<u>See</u> Doc. 9 at 3–4).  First, OCPA seeks to strike paragraph 20. This paragraph details the myriad of untoward activities Perry alleges he witnessed at OCPA.  (<u>See</u> Doc. 1 at 4–7).  Understandably, OCPA may not want these allegations in a public court filing.  However, these allegations are—at the very least—relevant to Perry's First Amendment claim, and they will not be stricken.

Second, OCPA seeks to strike paragraph 33.[9]  This paragraph describes the discipline faced by the Director of Finance and the Director of Communications after they wrote letters to OCPA complaining of the same misconduct about which Perry complained. (<u>See</u> <u>id.</u> at 9).  This assertion could support Perry's contention that he was treated differently than similarly situated employees.  This paragraph is thus relevant to Perry's allegations.

Third, OCPA seeks to strike paragraph 34.  This paragraph alleges that Singh encouraged one of Perry's colleagues to file a formal sexual harassment complaint against Perry after he filed the instant lawsuit.  (<u>See</u> <u>id.</u> at 9–10).  This allegation could support Perry's contention that OCPA and Singh retaliated against him for writing the July and November letters.  This paragraph thus has a connection to Perry's allegations.

Finally, OCPA moves to strike Perry's claims for punitive damages against it.  Perry acknowledges that he is not entitled to punitive damages against OCPA.  The Court will therefore strike Perry's request for punitive damages against OCPA.

## III.   Conclusion

Based on the foregoing, it is **ORDERED** as follows:

---

[9] OCPA argues that because paragraphs 33 and 34 were not incorporated into any count of the Complaint, they are irrelevant and should be stricken.  (<u>See</u> Doc. 9 at 4).  The Court finds this argument unpersuasive.

1.       OCPA's Motion to Dismiss (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**.  The motion is **GRANTED** as to Counts I, II, IV, and VI and is otherwise **DENIED**. Count I is **DISMISSED WITH PREJUDICE**.   Counts II, IV, and VI are **DISMISSED WITHOUT PREJUDICE**.  Perry may amend his Complaint within 20 days from the date of this Order.

2.       OCPA's Motion to Strike (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART**.   Perry's request for punitive damages against OCPA is **STRICKEN** from the Complaint.  The motion is otherwise **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on December 18, 2018.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties